UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.:

THE HANOVER INSURANCE
COMPANY, a New Hampshire
Corporation,

    Plaintiff,

vs.

MUNILLA CONSTRUCTION
MANAGEMENT, LLC, d/b/a MCM,
a Florida limited liability Company,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES AND REPLEVIN

The Hanover Insurance Company ("Hanover"), by and through its undersigned counsel, files its Complaint for Damages and Replevin against Defendant, Munilla Construction Management, LLC d/b/a/ MCM ("MCM"), and alleges:

### PARTIES, JURISDICTION AND VENUE

1. Hanover is a New Hampshire Corporation that maintains its principal place of business and nerve center of operations in Worcester, Massachusetts, making it a citizen of New Hampshire and Massachusetts in accordance with 28 U.S.C. § 1332(c)(1). Hanover is also licensed to conduct business in Florida.

2. MCM is a Florida limited liability company that maintains its principal place of business and nerve center of operations in Miami, Florida, and all members are located in Miami, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

3. The property subject to Hanover's replevin count and the damages Hanover seeks from MCM on its other counts exceed $1,000,000.

4. Jurisdiction is proper in this Court according to 28 U.S.C. § 1332 because Hanover and MCM are citizens of different states and complete diversity of citizenship exists.

5. Venue is proper in this division of the Court because the materials subject to Hanover's replevin claim are located in Palm Beach County.

## FACTS PERTINENT TO ALL COUNTS

6. Lodge Construction, Inc. ("Lodge") was the general contractor for a United States Army Corps of Engineers Project located in Palm Beach County known as the Site I Impoundment project (the "Project").

7. Lodge had entered a contract with the United States Corps of Engineers ("USACE") to perform the work required on the Project.

8. Hanover issued payment and performance bonds to secure Lodge's performance of the contract with the USACE and the payment of certain of Lodge's subcontractors and suppliers.

9. Lodge's work on the Project involved, in part, the use of the steel sheetpiling, walers, batter piles, and related accessories (collectively referred to herein as the "Sheetpiling Materials") to build a cofferdam wall that would hold water out of the construction site so Lodge could build an earthen levee that would ultimately serve as the wall of a reservoir.

10. The Sheetpiling Materials include 36 foot long, several feet wide, sheets of solid steel, walers, batter piles and related steel accessories.

11. After Lodge had performed a considerable portion of the work on the Project, the USACE terminated Lodge's contract and right to complete the Project.

12. When Lodge demobilized from the site, it left in place the Sheetpiling Materials, which it had bought and brought to the site before its termination.

13. After the termination, the USACE contacted Hanover and demanded that Hanover take over the Project in accordance with the terms of the Performance Bond.

14. As part of investigating the best way to complete the Project, Hanover hired a consultant and solicited bids from contractors potentially interested in completing the Project.

15. The bid solicitation included design parameters for the bidders' use.

16. As is common in bid processes, interested bidders asked various questions and asked for clarifications about the solicitation.

17. As part of answering the bidders' questions, Hanover's consultant, Lovett Silverman Construction Consultants ("LSCC"), issued Addendum No. 13 responding to various questions.

18. The very first question to which LSCC responded was: "Does the successful bidder become the legal owner of the sheetpiling, waler, batter piles, and other steel materials left on site? If no, who is the owner and how will they assess liquidation charges for damage to sheetpile during construction?"

19. LSCC's answer in Addendum 13 was, "No; the sheet-pile material shall be prepared for shipping and loaded onto trucks at the end of its use. The bidders are to include all costs to load the material on trucks provided by others. No guidelines for damage assessment have been outlined at this time; however, the Successful Bidder will be responsible for any damage that it causes."

20. As the bid process was coming to a close, LSCC emailed MCM to obtain MCM's Best and Final Offer ("BAFO") including "Alternate No. 2."

21. Alternate No. 2 asked MCM to provide a proposal to buy the Sheetpiling Materials.

22. By asking MCM for a proposal to buy the Sheetpiling Materials, Hanover wanted to know what MCM would pay to buy the Sheetpiling Materials from Hanover.

23. If Hanover accepted Alternate No. 2, the amount MCM offered would have been deducted from the BAFO.

24. When MCM submitted its BAFO, it responded to Alternate No. 2 by offering a value of $387,000.00 for the Sheetpiling Materials.

25. MCM's BAFO also included a decrease from its initial bid as purely a business decision to decrease the cost and win the bid.

26. MCM did not submit a bid according to the solicitation that Hanover, through LSCC, had published.

27. Instead, it "elected to assume complete responsibility for the cofferdam by providing its own design."

28. MCM's decision to assume full responsibility for the design was an attractive option for Hanover because it would allow Hanover to end its involvement with the Project and tender MCM to the USACE so MCM and the USACE could negotiate a new contract between themselves for the completion of the work.

29. On December 31, 2012, the USACE and Hanover entered a Tender and Release Agreement wherein Hanover tendered MCM as the completion contractor to the USACE and Hanover received a release from the USACE for most of its obligations.

30. MCM is not a party to the Tender and Release Agreement.

31. MCM entered a contract directly with the USACE to complete the Project.

32. Hanover is not a party to the USACE/MCM contract.

33. After MCM entered its contract with the USACE, SunTrust Bank filed suit (Case No. 9:13-cv-80156-DTKH) in the United States District Court for the Southern District of Florida (the "SunTrust Litigation").

34. SunTrust was Lodge's lender.

35. SunTrust filed the SunTrust Litigation against Lodge and third parties with arguably perfected interests in Lodge's property that SunTrust sought to foreclose.

36. In the SunTrust Litigation, SunTrust sought to foreclose on various of Lodge's assets, including the Sheetpiling Materials.

37. SunTrust added Hanover and other secured creditors as parties to the SunTrust Litigation.

38. SunTrust did not add MCM to the SunTrust Litigation because MCM did not have a recorded security interest in any of Lodge's assets, including the Sheetpiling Materials.

39. On August 8, 2013, Hanover's counsel mailed and e-mailed a letter to MCM's counsel informing MCM of the SunTrust Litigation, informing MCM of the fact that the Sheetpiling Materials were at issue in the litigation, and advising MCM of the dates for mediation and trial. A copy of this letter is attached hereto as **Exhibit "1."**

40. The letter from Hanover's counsel to MCM's counsel also attached a copy of Addendum No. 13 to the Request for Bid, which informed the bidders they would not become legal owners of the Sheetpiling Materials at the completion of the Project.

41. On August 12, 2013, SunTrust, Hanover, Lodge, and the USACE mediated the SunTrust Litigation.

42. MCM did not attend mediation despite receiving an invitation from Hanover to do so.

43. On August 26, 2013, Hanover's counsel mailed and e-mailed a letter to MCM's counsel confirming receipt of an email MCM sent to LSCC on August 22, 2013 suggesting that MCM had an ownership interest in the Sheetpiling Materials.

44. In that letter, Hanover rebutted MCM's ownership claims and reminded MCM that it knew about the SunTrust Litigation but was taking no action in that case to protect its rights. A copy of this letter is attached hereto as **Exhibit "2."**

45. As a result of negotiations that started at mediation, SunTrust and Hanover filed a Joint Motion for Entry of Stipulated Final Judgment of Replevin and Possession as to Sheetpiling Collateral that dealt directly with the ownership of the Sheetpiling Materials.

46. On September 17, 2013, this Court entered a Stipulated Final Judgment of Replevin and Possession as to Sheetpiling Collateral (the "Sheetpiling Judgment"). [SunTrust Litigation, Dkt. 73]. A copy of the Sheetpiling Judgment is attached hereto as **Exhibit "3."**

47. The Sheetpiling Judgment provides, in part, that SunTrust and Hanover were equally entitled to possession of the Sheetpiling Materials and would equally split the proceeds from the sale of the materials once sold. [SunTrust Litigation, Dkt. 73, ¶ 2; Exhibit 3, ¶ 2].

48. On the day the Court entered the Sheetpiling Judgment, Hanover's counsel mailed and e-mailed a letter to MCM's counsel delivering a copy of the Sheetpiling Judgment to MCM as the Court instructed in the Sheetpiling Judgment. A copy of this letter is attached hereto as **Exhibit "4."**

49. On September 27, 2013, MCM voluntarily submitted itself to the Court's jurisdiction by filing a motion to intervene in the SunTrust Litigation to try to set aside the Sheetpiling Judgment. [SunTrust Litigation, Dkt. 76].

50. MCM's Motion sought to assert its purported claim to ownership of the Sheetpiling Materials.

51. On December 5, 2013, the Court denied MCM's Motion to Vacate. [SunTrust Litigation, Dkt. 86].

52. In its order, the Court found that MCM had specific notice of the SunTrust Litigation and mediation, found that MCM had no excuse for delaying in the pursuit of "its obligation to proceed with reasonable dispatch to protect its claimed interest in the litigation," and rejected MCM's effort to undo the Sheetpiling Judgment, thereby leaving that judgment intact. [SunTrust Litigation, Dkt. 86].

53. MCM did not appeal the Court's Order.

54. The Sheetpiling Judgment vested 50% ownership of the Sheetpiling Materials with SunTrust and 50% ownership with Hanover. [SunTrust Litigation, Dkt. 73, ¶ 2.; Exhibit 3, ¶ 2]

55. Hanover has acquired SunTrust's ownership interest in the Sheetpiling Materials and now owns 100% of the Sheetpiling Materials. A copy of the Assignment from SunTrust to Hanover is attached hereto as **Exhibit "5."**

56. Thereafter, Hanover recorded a UCC-1 Financing Statement to perfect its secured interest in the Sheetpiling Materials. A copy of Hanover's UCC-1 Financing Statement is attached hereto as **Exhibit "6."**

57. Approximately 6 months after the entry of the Sheetpiling Judgment, on June 10, 2014, MCM filed a lawsuit again seeking to disrupt Hanover's ownership interests in the Sheetpiling Materials as reflected in the Sheetpiling Judgment.

58. Hanover removed MCM's lawsuit to this Court and the case proceeded under Case No. 1:14-cv-22502-JAL ("MCM I").

59. On December 9, 2014, this Court entered its Order Granting in Part and Denying in Part Hanover's Motion to Dismiss (the "MCM I Dismissal Order") [MCM I, Dkt. 40].

60. The MCM I Dismissal Order was clear in its determination of the ownership of the Sheetpiling Materials: "The Court has already adjudicated the rights to the Sheetpiling Materials, vesting equal ownership among SunTrust and Hanover. . . . . The Court reiterated that ownership in its Order denying MCM's Motion to Intervene in the SunTrust Action." [MCM I, Dkt. 40, p. 9].

61. Consequently, the MCM I Court dismissed with prejudice MCM's claim that was essentially designed to disrupt this Court's judgment granting Hanover an ownership interest in the Sheetpiling Materials.

62. MCM did not appeal the MCM I Dismissal Order.

63. Thereafter, MCM dismissed MCM I without prejudice. [MCM I, Dkt. 46].

64. Less than a month after voluntarily dismissing MCM I, on January 28, 2015, MCM filed a new Complaint against Hanover in Case No. 1:15-CIV-20307-JAL. ("MCM II").

65. In MCM II, MCM, among other things, claimed it had a right to buy the Sheetpiling Materials.

66. On July 10, 2015, the Court dismissed MCM II without prejudice. [MCM II, Dkt. 44.]

67. On July 13, 2015, Hanover's counsel wrote MCM's counsel demanding immediate access to the Project site to remove the materials MCM was no longer using. (*See,* copy of letter attached hereto as **Exhibit "7."**)

68. On July 16, 2015, MCM wrote the USACE taking exception to Hanover's right to access the project to remove the unused materials. (*See,* copy of letter attached hereto as **Exhibit "8."**)

69. On July 17, 2015, the USACE asked counsel whether they had resolved their disagreement about Hanover's right of access and entitlement to the Sheetpiling Materials. Hanover sent the e-mail attached hereto as **Exhibit "9"** in response to that inquiry.

70. In response to Hanover's e-mail to the USACE, MCM sent a July 20 letter to Hanover's counsel wherein, MCM rescinded its objection to Hanover accessing the site to inspect and remove the materials. (*See,* copy of letter attached hereto as **Exhibit "10."**)

71. In its letter, MCM stated,

> MCM is willing to agree to Hanover's removal of the Sheetpiling. . . . Please note: MCM will remove whatever Sheetpiling remains in the ground by July 29, but will not assist Hanover with the loading or transporting of the Sheetpiling materials on the ground. Also note: all Sheetpiling materials must be off the project by August 3, 2015, otherwise MCM may be subject to Liquidated Damages. In that regard, please coordinate the loading and transportation of the Sheetpiling materials with USACE.

72. Given MCM's July 20 letter, Hanover made arrangements for its consultant to visit the project site on July 24 to inspect the materials and take an inventory of the materials remaining on site.

73. On July 21, 2015, Hanover's counsel wrote MCM's counsel and informed MCM about the logistics for a July 24 site inspection. (*See,* letter attached as **Exhibit "11."**)

74. In light of MCM's July 20 letter stating that Hanover could move forward with a sale of the Sheetpiling Materials, Hanover also had a representative of the buyer attend the July 24 site visit so he could begin to evaluate and coordinate the removal of the materials from the site.

75. A representative of MCM accompanied Hanover's consultant and the buyer on the July 24 site visit.

76. The MCM representative showed Hanover's consultant and the representative of the buyer the Sheetpiling Materials Lodge had left on site.

77. Hanover's consultant prepared an inventory of the materials MCM showed the consultant and representative of the buyer on July 24. A copy of the inventory is attached hereto as **Exhibit "12."**

78. The inventory reflects that of the 6,143,915.28 pounds of materials Lodge had delivered to the site, only 1,564,087.60 pounds remained.

79. Hanover's consultant asked the MCM representative on July 24 if any of the Lodge materials were located anywhere else on site.

80. The answer from MCM's representative was no.

81. On July 27, Hanover's counsel sent the letter attached hereto as **Exhibit "13"** to MCM's counsel notifying him of the missing materials and demanding the immediate surrender of the materials.

82. In the meantime, on July 28, as the Sheetpiling Judgment allows, Hanover began making arrangements with the USACE to remove those materials still on site that MCM was not using. (*See*, copy of e-mail attached hereto as **Exhibit "14."**)

83. Then, on July 29, 2015 MCM's counsel sent Hanover's counsel the e-mail attached hereto as **Exhibit "15,"** which states, in part, "MCM ***will continue to remove Sheetpiling from the Project*** until Hanover's contractor arrives to the Project, at which point Hanover can remove up to 6,143,915.28 pounds of the Sheetpiling that remains on the Project." (Emphasis added.)

84. The July 29 e-mail from MCM's counsel confirms that MCM has removed Sheetpiling Materials that Lodge delivered to the Project.

85. Hanover's counsel sought clarification about MCM's removal activities and the location of the Sheetpiling Materials as to these issues in an e-mail the same day, July 29. (*See,* copy of e-mail attached hereto as **Exhibit "16."**)

86. When MCM did not immediately respond, Hanover's counsel sent another e-mail on July 29 asking about the quantity of the Sheetpiling Materials left on site, their specific location, and whether MCM would allow Hanover to remove the materials. (*See,* copy of e-mail attached hereto as **Exhibit "17."**)

87. MCM did not answer the questions Hanover asked.

88. In a final effort to amicably resolve the matter, Hanover's counsel sent the letter attached hereto as **Exhibit "18"** on July 31, 2015.

89. Instead of responding to the questions Hanover had asked, MCM responded through counsel by e-mail on July 31 confirming that MCM had removed, and would continue removing Sheetpiling Materials from the Project site.

90. Hanover has retained the undersigned attorneys to represent it in this action and has agreed to pay these attorneys a reasonable fee for all fees and costs incurred.

91. All conditions precedent to maintaining this action have occurred, been fulfilled, or waived.

## COUNT I – REPLEVIN

92. Hanover realleges and incorporates the allegations of paragraphs 1 through 91 as if fully set forth herein.

93. This is an action for the replevin of personal property pursuant to Section 78.068, *Florida Statutes*, the value of which is in excess of $1,000,000.00.

94. The Sheetpiling Materials are specifically identified in the listing LSCC prepared, a copy of which is attached hereto as **Exhibit "12."**

95. Hanover is the owner of the Sheetpiling Materials by virtue of the Sheetpiling Judgment and SunTrust's assignment of its interest in the Sheetpiling Materials to Hanover. A copy of the Sheetpiling Judgment is attached hereto as **Exhibit "3,"** and a copy of the Assignment from SunTrust to Hanover, which thereby vests 100% ownership of the Sheetpiling Materials, is attached hereto as **Exhibit "5."**

96. Moreover, Hanover has a perfected security interest in the Sheetpiling Materials pursuant to its duly recorded UCC-1 Financing Statement. (See, **Exhibit "6."**)

97. MCM has admitted that it no longer needs the Sheetpiling Materials for its work on the Project and stated that the materials would be removed from the ground by July 29, 2015.

98. MCM refuses to surrender possession of the Sheetpiling Materials to Hanover despite repeated demands from Hanover.

99. Correspondence from MCM and its counsel establishes that MCM has removed the Sheetpiling Materials from the Project site. (See, **Exhibits "10" and "15".**)

100. MCM refuses to tell Hanover where it has taken the Sheetpiling Materials.

101. Consequently, MCM is engaging in conduct, including the removal of the Sheetpiling Materials from the Project site, that may place the Sheetpiling Materials in danger of destruction, concealment, waste, removal from the state, sale to a third party, and/or removal from the jurisdiction of this Court.

102. To the best of Hanover's knowledge, information and belief, the current value of the Sheetpiling Materials (which are subject to the Sheetpiling Judgment and Hanover's security interest) is at least $1,000,000, which value is based on an offer to buy the Sheetpiling Materials that Hanover has received.

103. MCM is wrongfully detaining the Sheetpiling Materials Hanover's demands for possession.

104. MCM's wrongful detention of the Sheetpiling Materials is based, at least in part, on MCM's refusal to acknowledge Court's adjudication of ownership in the Sheetpiling Judgment and subsequent confirmation of ownership in the MCM I Dismissal Order.

105. The Sheetpiling Materials have not been taken for a tax, assessment, or fine pursuant to law.

106. The Sheetpiling Materials have not been taken under an execution or attachment against the property of Hanover.

107. Upon information and belief, the Sheetpiling Materials are located at Site I Impoundment, with the USACE, located on S.R. 827, Loxahatchee Road, Boca Raton, Florida on the north side of the road from N. University Dr. west toward the L-40 canal at Everglades National Park. Hanover does not know where the Sheetpiling Materials that MCM has removed from the Project site are located because MCM will not tell Hanover the location, despite request for that information.

WHEREFORE, Hanover demands judgment against MCM:

(1) directing the Clerk of the Court to issue a Writ of Replevin in favor of Hanover or issuing, without delay, an order to show cause to MCM, pursuant to the provisions of section 78.065, *Florida Statutes*, giving MCM and opportunity to be heard as to why the Sheetpiling Materials should not be immediately delivered to Hanover, (1) granting Hanover immediate possession of the Sheetpiling Materials;

(2) permitting Hanover to enter the premises at Site I Impoundment, with the USACE, located on S.R. 827, Loxahatchee Road, Boca Raton, Florida on the north side of the road from N. University Dr. west toward the L-40 canal at Everglades National Park, for the purpose of removing the Sheetpiling Materials;

(3) ordering MCM to disclose the locations of all Sheetpiling Materials MCM has removed from the Project site;

(4) allowing Hanover to remove the Sheetpiling Materials from such other locations;

(5) awarding Hanover all damages sustained by reason of MCM's wrongful detention of the Sheetpiling Materials, as provided in section 78.01, *Florida Statutes*;

(6) awarding Hanover its reasonable attorneys' fees since Hanover is essentially a judgment creditor under the Sheetpiling Judgment and MCM is in possession of the Sheetpiling Materials governed by that judgment but refuses to relinquish possession of the materials; and

(7) granting Hanover all such further relief as this Court deems proper.

## COUNT II – CONVERSION

108. Hanover realleges and incorporates the allegations of paragraphs 1 through 91 as if fully set forth herein.

109. This is an action for damages that exceed $1,000,000.00.

110. Hanover owns and has a right to possess the Sheetpiling Materials.

111. MCM has interfered with Hanover's ownership of and possessory right to the Sheetpiling Materials.

112. MCM's actions, as reflected in the correspondence attached hereto as Exhibits "10" and "15," reflect its intent to deprive Hanover of its ownership of and possessory right to the Sheetpiling Materials.

113. MCM's actions threaten a diminution in value of Hanover's Sheetpiling Materials.

114. MCM's actions are depriving Hanover of its ability to sell the Sheetpiling Materials.

115. Hanover has suffered damages, which are continuing in nature, as a result of MCM's actions and refusal to relinquish possession of the Sheetpiling Materials.

WHEREFORE, Hanover requests that this Court enter a judgment for damages against MCM, award Hanover its costs of this action, and grant Hanover such further relief as the Court deems proper.

### COUNT III – CIVIL THEFT

116. Hanover realleges and incorporates the allegations of paragraphs 1 through 91 as if fully set forth herein.

117. This is a claim for civil theft pursuant to Chapter 772, *Florida Statutes*.

118. As a result of MCM's wrongful deprivation of the Sheetpiling Materials and refusal to relinquish all of the Sheetpiling Materials to Hanover, MCM has knowingly obtained

the Sheetpiling Materials that is contrary to the terms of the Sheetpiling Judgment, Hanover's ownership rights, and Hanover's security interest in the Sheetpiling Materials.

119. MCM has intentionally deprived Hanover of the possession of the Sheetpiling Materials and misappropriated them for its own use.

120. Hanover has made a written demand that MCM relinquish possession to Hanover of the Sheetpiling Materials that MCM is wrongfully detaining, but MCM has refused to accede to the demand within thirty (30) days.

121. Under section 772.11, *Florida Statutes*, Hanover is entitled to three times its actual damages sustained as a result of MCM actions and is also entitled to recover its reasonable attorneys' fees and court costs.

WHEREFORE, Hanover requests that this Court enter a judgment for damages against MCM, award Hanover its attorneys' fees and costs of this action, and grant Hanover such further relief as the Court deems proper.

*/s/ Ryan J. Weeks*
BRETT D. DIVERS, ESQ.
Florida Bar No.: 973246
RYAN J. WEEKS, ESQ.
Florida Bar No.: 57897
MILLS PASKERT DIVERS
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
bdivers@mpdlegal.com
rweeks@mpdlegal.com
sjames@mpdlegal.com
csoltis@mpdlegal.com
*Counsel for Plaintiff, The Hanover Insurance Company*
